UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BOBBI JO FOLEY, o/b/o DD,        )
                                 )
       Plaintiff                 )
                                 )
v.                               )    No. 2:10-cv-264-DBH
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
       Defendant                 )

# REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably determined that the plaintiff's child was not disabled. For the reasons that follow, I recommend that the commissioner's decision be affirmed.

The sequential evaluation process generally followed by the commissioner in making disability determinations, *see* 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), is somewhat modified when the claimant is a child, 20 C.F.R. § 416.924, as here. In accordance with that section, the administrative law judge found, in relevant part, that the child, who was born on April 4, 1998, suffered from severe impairments of attention deficit hyperactivity disorder ("ADHD") and a question of Asperger's syndrome, Findings 1, 3, Record at 15; that he did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment included in Appendix 1

---

[1] This action is properly brought under 42 U.S.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

to Subpart P of 20 C.F.R. Part 404 (the "Listings"), Finding 4, *id*.; that he did not have an impairment or combination of impairments that functionally equaled the criteria of any impairment included in the Listings, Finding 5, *id*.; and that he, therefore, had not been disabled, as that term is defined in the Social Security Act, since March 25, 2005, the date that the application was filed, Finding 6, *id*. at 23. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

When a claim for benefits is made on behalf of a child, the commissioner must first determine whether the alleged impairment is severe. 20 C.F.R. § 416.924(a), (c). If the impairment is found to be severe, as was the case here, the question then becomes whether the impairment is one that is listed in, or medically or functionally equals, the Listings. *Id*. § 416.924(a). If the impairment, or combination of impairments, does not meet or equal this standard, the child is not disabled. *Id*. § 416.924(d)(2).

An impairment or combination of impairments is medically equal in severity to a listed impairment when the medical findings are at least equal in severity and duration to the listed findings; medical equivalence must be based on medical findings. *Id*. § 416.926(a) & (b). An impairment or combination of impairments is functionally equivalent to a listed impairment

when it results in marked limitations in two domains of functioning or an extreme limitation in one domain, based on all of the evidence in the record. *Id*.

A "marked" limitation occurs when an impairment or combination of impairments interferes seriously with the claimant's ability independently to initiate, sustain, or complete activities. *Id*. § 416.926a(e)(2). An "extreme" limitation exists when an impairment or combination of impairments interferes very seriously with the claimant's ability independently to initiate, sustain, or complete activities. *Id*. § 416.926a(e)(3). No single piece of information taken in isolation can establish whether a particular limitation is marked or extreme. *Id*. § 416.926a(e)(4).

In this case, the administrative law judge found that the plaintiff's child had (i) no limitation, to less than a marked limitation, in the domain of acquiring and using information, (ii) a marked limitation in the domain of attending and completing tasks, (iii) less than a marked limitation in the domain of interacting and relating with others, (iv) no limitation in the domain of moving about and manipulating objects, (v) no limitation in the domain of the ability to care for himself, and (vi) no limitation in the domain of health and physical well-being. *See* Record at 19-22.

## I. Discussion

The plaintiff contends that the administrative law judge (i) failed to assess the severity of certain of the child's conditions, (ii) improperly relied on Global Assessment of Functioning ("GAF") scores to assess severity, (iii) failed to address the substance of teacher questionnaires and Pupil Evaluation Team ("PET") evaluations, (iv) failed to take into account the child's performance in a structured or supportive environment, and (v) did not follow the "whole child" model set forth in Social Security Ruling 09-1p ("SSR 09-1p") in considering whether the child's

behavior limited his functioning in certain domains. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 12) at 14-21. I find no reversible error and, accordingly, recommend that the court affirm the decision.

## A. Asserted Failure To Assess Severity of Some Conditions

The plaintiff faults the administrative law judge for making an "incomplete" finding with respect to the child's Asperger's syndrome, casting doubt on whether he deemed the condition "severe" by concluding that there was a "question" of the disorder and noting that one doctor had termed it "mild," and making no findings whatsoever with respect to diagnoses of (i) Pervasive Developmental Disorder ("PDD"), NOS (Not Otherwise Specified), (ii) impaired processing speed, (iii) cognitive disorder, and (iv) relational problem, NOS. *See id*. at 15.

As counsel for the commissioner suggested at oral argument, the plaintiff fails to show how any error at this step affected the ultimate outcome. *See Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("At oral argument, counsel for the plaintiff contended that, if the administrative law judge erred in failing to find a particular impairment to be severe at Step 2, remand would always be required, as the rest of the process is invalid once an error is made at Step 2. This assertion is contrary to the established law in this district, where an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.") (citations and internal quotation marks omitted).

In assessing severity, the administrative law judge acknowledged: "The claim[ant] has a history of attention and work completion problems, and has been evaluated by a number of psychologists/neuropsychologist/psychiatrists that has resulted in a number of diagnoses and/or recommendations to address the problems." Record at 15 (citations omitted). The plaintiff

argues that the administrative law judge "essentially classified D.D.'s claim as one for ADHD, rather than seeing it for the more complex interrelation of impairments that the diagnostic opinion evidence demonstrates." Statement of Errors at 17. Yet, she fails to illuminate how the administrative law judge omitted consideration of functional limitations that might have altered his assessment of the degree of impairment in various domains. *See id*. at 14-17. In any event, in assessing the degree of the child's impairment in certain domains, the administrative law judge took into account his reported slow processing speed and difficulties in relating to and interacting with others. *See, e.g.*, Record at 19 (noting processing speed difficulties in assessing degree of limitation in domain of acquiring and using information), 20 (noting reported social interaction difficulties and idiosyncratic style in assessing degree of limitation in domain of interacting and relating with others).

The plaintiff fails to demonstrate that any error in minimizing or failing to address certain diagnoses was reversible error.

## B. Asserted Error in Use of GAF Scores

The plaintiff next complains that the administrative law judge erred, in considering the claimant's functional capacity, by giving "some weight" to GAF scores assessed by Bennett S. Slotnick, Ph.D., and Gina Oliveto, M.D. *See* Statement of Errors at 17-18; Record at 18, 587, 843.[2] She asserts that, in promulgating a revision of regulations for evaluating mental disorders in 2000, the commissioner "declared it agency policy that the use of the GAF scale is inappropriate in the disability determination process." Statement of Errors at 17.

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.

5

The plaintiff reads too much into the agency comment on which she relies. In that comment, the commissioner rejected a recommendation that the agency discuss the GAF scale in the introductory paragraphs of Listing 12.00D. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764 (Aug. 21, 2000). The agency observed that, although it had mentioned the GAF scale in the preamble to the Notice of Proposed Rulemaking, it did so not "to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source 'normally can provide valuable additional functional information.'" *Id*. The agency explained:

> To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

*Id*. at 50764-65.

This comment does not preclude the use by administrative law judges of GAF scores in assessing the severity of a claimant's mental functional impairments. It clarifies that, while the GAF scale has no direct Listings correlation, it provides valuable information. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010) ("While Halverson correctly states the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs, the GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning.") (citations and internal quotation marks omitted); *Graves v. Astrue*, Civil Action No. 10-169-HRW, 2011 WL 1838688, at *3 (E.D. Ky. May 13, 2011) (although, per the commissioner's 2000 comment, GAF scores are not dispositive of disability, GAF scores may help an administrative law judge assess mental RFC). *See also, e.g., Gonzalez-Rodriguez v.*

*Barnhart*, 111 Fed. Appx. 23, 25 (1st Cir. 2004) (GAF score may be of considerable help to an administrative law judge in formulating a claimant's mental RFC).

The administrative law judge committed no error in taking GAF scores into account in this context.

C. **Asserted Failure To Address Substance of Teacher Questionnaires, PET Evaluations**

The plaintiff next complains that, while the administrative law judge gave "some weight" to teacher reports, he failed to address their consistent findings that the child struggled in school and, by 2008, was seriously deficient in his academic performance. *See* Statement of Errors at 18. She contends, for example, that a teacher questionnaire completed in May 2005 revealed serious deficits in the domains of acquiring and using information as well as of attending and completing tasks, and that, while the 2008 teacher questionnaire did not suggest the same level of dysfunction, it still demonstrated the child's problems in completing homework and working independently. *See id*.

She adds that PET reports from 2007 and 2008 underscore this issue. *See id*. at 18-19; *see also, e.g*., Record at 214 (PET report dated January 29, 2008, noting that child had Cs and Ds based only on the work that he had completed, was still missing many assignments, was disorganized, had difficulty completing work, and was distractible), 222 (PET report dated December 4, 2007, observing that child was receiving three "E" grades due to failure to complete work and two Cs, that he played at his desk and was distracted, and that work completion was an issue).

I find no error. The administrative law judge found a marked impairment in the domain of attending and completing tasks precisely because the child had difficulty completing tasks and required refocusing and redirection. *See id*. at 20. The plaintiff suggests that, in view of the

7

child's academic performance, he should have been judged markedly impaired, as well, in the domain of acquiring and using information. *See* Statement of Errors at 18. Yet, the administrative law judge's finding of less than a marked limitation in that area is supported by substantial evidence, including teacher questionnaires demonstrating a significant improvement in that category by fourth grade and the findings of DDS nonexamining consultants. *Compare* Record at 164 (first-grade teacher questionnaire assessing child, in domain of acquiring and using information, with four scores of 3 (an obvious problem) and five scores of 4 (a serious problem)) *with id*. at 203 (fourth-grade teacher questionnaire assessing child, in domain of acquiring and using information, with two scores of 3 and no scores of 4 or 5); *see also id*. at 687 (finding by DDS nonexamining consultant Lewis F. Lester, Ph.D., of less than marked limitation in acquiring and using information), 698 (finding by DDS nonexamining consultant David Houston, Ph.D., of less than marked limitation in acquiring and using information despite sub-par academic performance).[3]

### D. Asserted Failure To Assess Performance in a Structured Environment

The plaintiff next contends that the administrative law judge failed to account for the child's performance in a "structured or supportive" environment as required by 20 C.F.R. § 416.924a(b)(5)(iv). *See* Statement of Errors at 19. That regulation provides:

> A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive

---

[3] The plaintiff suggests that the child's cognitive processing speed deficit "could be viewed as a root cause of the [child's] poor school performance." Statement of Errors at 16. Yet, she points to no expert evidence linking that deficit to poor academic performance. The administrative law judge reasonably construed teacher and PET evidence from 2007 and 2008 as indicating that ADHD symptoms, implicating the domain of attending and completing tasks, were the key cause of the child's school work completion and academic performance problems. *See, e.g.,* Record at 203-04, 214, 222.

> setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

20 C.F.R. § 416.924a(b)(5)(iv)(C). The plaintiff complains that the administrative law judge did not consider the child's need for modifications, accommodations, and enhanced special education services at school or his dysfunctional behavior and conduct in his home environment. *See* Statement of Errors at 20.

While the administrative law judge did not compare and contrast the child's functioning inside and outside of a structured (school) setting, he mentioned (i) the school modification of the allowance of extra time to complete an assignment, *see* Record at 17, (ii) reports, primarily by the child's mother, of the child's difficulties at home, *see id.* at 16 (recounting mother's and father's hearing testimony), 20 (recounting, in context of domain of interacting and relating with others, reported behavior at home), and (iii) the comment of a classroom teacher that the child's problems were "not as severe as mom makes out." *Id*. at 17 (quoting *id*. at 170). Dr. Lester also noted the provision to the child of two hours daily of resource room support, and both he and Dr. Houston noted reports of the child's behavior at home. *See id*. at 687-88, 701.

In the circumstances, there was no error.

### E.  Asserted Failure to Follow SSR 09-1p

The plaintiff finally argues that the administrative law judge contravened SSR 09-1p, requiring a so-called "whole child approach," by ignoring home-life deficits in the domains of acquiring and using information (in the form of severe inability to complete homework) and interacting and relating to others (in the form of particularly bad social behavior at home). *See* Statement of Errors at 20-21.

9

SSR 09-1p requires adjudicators, *inter alia*, to consider how a child functions across all settings and to take into account whether difficulties in any one setting (for example, home or school) reflect impairment in each of the six functional domains. *See* SSR 09-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010), at 350-51. The rule provides:

> [T]he rating of limitation of a domain is not an "average" of what activities the child can and cannot do. When evaluating whether a child's functioning is age-appropriate, adjudicators must consider evidence about all of the child's activities. We do not "average" all of the findings in the evidence about a child's activities to come up with a rating for the domain as a whole. The fact that a child can do a particular activity or set of activities relatively well does not negate the difficulties the child has in doing other activities.

*Id*. at 357.

Yet, the rule is clear that the commissioner does not "require . . . adjudicators to discuss all of the considerations in the sections below [which discuss, *inter alia*, determining which domains are involved in doing activities and rating the severity of limitations in the domains] in their determinations and decisions," but rather "only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." *Id*. at 352.

While the administrative law judge did not expressly consider the child's functioning at home in his discussion of the child's ability to acquire and use information, *see* Record at 19, he referred to reports of Susan Powers, Psy.D., and Dr. Slotnick in which the child's functioning at home was addressed, *see id*. at 19, 562-68 (Powers), 578-87 (Slotnick). In analyzing the child's ability to interact and relate with others, the administrative law judge did take into consideration certain testimony of the plaintiff with respect to the child's functioning, as well as the Powers report, which addressed that subject of the child's functioning at home in some detail, *see id*. at 20, 562-68.

This sufficed to satisfy the requirements of SSR 09-1p.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge